[No. 29795. Department One. June 21, 1946.]

GEORGE D. WHITE, *Respondent*, v. S. S. MULLEN *et al.*, *Appellants.*[1]

[1]Reported in 170 P. (2d) 322.

*Wright & Wright* and *George D. Lantz,* for appellants.

*Ralph B. Potts,* for respondent.

MILLARD, J.—On November 23, 1942, the United States government, through its Federal public housing authority, promulgated specifications for war housing project at Everett, Washington. The advertised invitation for bids called for sealed bids subject to the conditions

". . . contained herein, and the Contract Documents, will be received by the Housing Authority of the City of Everett, 701 Medical Dental Building, Everett, Washington, until 2 o'clock P. M., on Tuesday, January 12, 1943, and then publicly opened . . ."

The invitation for bids stated:

"Attention is called to the fact that the minimum wage rates as set forth in the Contract Documents must be paid on this project . . ."

The specifications, part of the contract documents, were placed in the hands of copartners Mullen & Strand, whose bid for furnishing the materials and performance of the work for the construction of the war housing project at Everett, was accepted by the government. The general contract therefor between the United States government, by the Federal public housing authority, and the copartners was executed March 15, 1943. In the specifications under the title "Special Conditions," minimum wage rates are listed, including "painters (brush)" at $1.25 an hour, which is the only one listed that is material in the case at bar.

The Davis-Bacon act, 40 U.S.C.A. (9A, FCA.), § 276a, relating to the construction of public buildings or public works of the United States, provides for the determination by the secretary of labor of the prevailing wage rates of laborers and mechanics of the various classes in the locality in which the work is to be performed, and that the rates so determined shall be listed in the specifications and shall be the minimum rates paid to the respective classes of workmen.

The President's executive order No. 9250 (50 U.S.C.A. (App.) 314-317, § 901), the wage stabilization law, places

a ceiling on wages as of September 15, 1942; that is, the minimum prevailing wage rate that then could be paid was also made the maximum that could be paid with certain exceptions, one being prevailing wage rates which should thereafter become effective as the minimum wage rate for that particular public building or area under the Davis-Bacon act (§ 276a of Title 40).

Under the Davis-Bacon act, the secretary of labor determines the wage rates for the particular public building or area, but such wage rate does not become the legal wage rate until it is listed in the specifications for the work, which are referred to and made part of the advertised invitation for bids and on which the bid and the contract are based.

The determination by the secretary of labor of the wage rate of $1.25 an hour for the project involved herein for painters became effective by being listed in the specifications designated in the advertised invitation for bids, and the maximum wage rate by reason of executive order No. 9250 cited above. There is incorporated into the contract of the United States government with defendants, executed March 15, 1943, the provision that the "painters, brush" shall be paid a minimum wage of $1.25 an hour—the wage rate determined by the secretary of labor under the Davis-Bacon act—

"c. The determination of the Secretary of Labor shall be deemed to establish the minimum wages which may be paid to the designated laborers and mechanics . . .

"d. The specified wage rates are minimum wage rates only, and the Government will not consider any claims for additional compensation made by the Contractor because of payment by the Contractor of any wage rate in excess of the applicable rate contained herein. All disputes in regard to the payment of wages in excess of those specified herein shall be adjusted by the Contractor."

On April 13, 1943, defendants entered into a subcontract with plaintiff. All of the terms, conditions, and specifications forming a part of the general contract of defendants with the United States government were incorporated into

and made a part of the subcontract of defendants with plaintiff.

On June 23, 1943, defendants entered into a supplemental agreement with the Federal public housing authority whereby defendants agreed to amend the pay rate for painters from $1.25 an hour to $1.40 an hour. Paragraph (e) of the supplemental agreement provides that paragraph (d) of § 6, of the special conditions in the specifications promulgated November 23, 1943, which are a part of the general contract and the subcontract, shall be deleted and the following inserted in lieu thereof:

"The contractor shall not pay wage rates in excess of those specified in the contract, as required by Executive Order 9250 and the Rules and Regulations of the National War Labor Board."

The supplemental agreement further reads:

"Now, THEREFORE, subject to the conditions hereinafter set forth, there is no change in the contract price and the contract time is not changed.

"The conditions hereinafter referred to are as follows:

"A. The aforementioned change, and work affected thereby, is subject to all contract stipulations and covenants:

"B. The rights of the United States of America are not prejudiced: and

"C. All claims against the United States of America, National Housing Agency, Federal Public Housing Authority, which are incidental to or as a consequence of the aforementioned change, are satisfied:"

Plaintiff could not obtain painters for $1.25 an hour or any amount less than $1.40 an hour, as the latter was the local union wage scale; and in order to perform his subcontract it was necessary that he pay the additional fifteen cents an hour. On the theory that the supplemental agreement of defendants with the United States government to change the pay rate from $1.25 to $1.40 an hour entitled plaintiff to recovery from defendant contractors the differential of fifteen cents hourly, which he had to pay, plaintiff instituted this action against defendants.

Trial to the court resulted in findings and judgment allowing recovery to plaintiff of $2,296.72 on his complaint

and awarding defendants recovery of $2,758.42 on their cross-complaint. An affirmative judgment in the amount of $461.70 was entered in defendants' favor. It was stipulated by the parties that plaintiff owed defendants $2,758.42, and that $2,296.72 was the correct amount to be awarded to plaintiff if he was entitled to any recovery from defendants. Defendants, who appeal from the judgment, concede that the amount of recovery allowed plaintiff is correct if plaintiff is entitled to recover anything.

The general contract of appellants with United States government and the subcontract of respondent with appellants were on a lump sum basis. By their supplemental agreement with the Federal public housing authority, appellants agreed to amend the pay rate for respondent's painters from $1.25 an hour to $1.40 an hour, and agreed further that there should be no change in the contract price. Provision "C," quoted above, is to the effect that all claims against the United States government incidental to or as a consequence of the change in the wage scale from $1.25 to $1.40 an hour, "are satisfied."

The subcontract of respondent subcontractor with appellants, as the general contractors, provided:

"The Contractor agrees—

"(d) To be bound to the Subcontractor by all the obligations that the Owner assumes to the Contractor under the Agreement, General Conditions, Drawings and Specifications, and by all the provisions thereof affording remedies and redress to the Contractor from the Owner, except as otherwise provided herein."

Under the subcontract the contractors were obligated by subsection (i) of § 5 of the subcontract

". . . to give the Subcontractor an opportunity to be present and to submit evidence in any arbitration involving his rights between the General Contractor and the Owner."

The order for change of the wage scale was accepted and signed by appellants June 25, 1943. Appellants signed the contract for amendment of the wage scale without showing that paper to the respondent, who knew nothing of the change order until same was shown to him in the office

of his attorney the year following. Respondent was never consulted about the terms of the order by anyone representing appellants.

There had been a redetermination of the wage scale prior to the time of the execution of appellants' subcontract with respondent. Respondent did not learn that the wage scale had been changed until he went to Everett to obtain painters, at which time the business agent of the Everett painters' union exhibited a letter dated March 27, 1943, from the department of labor advising that the department had been recognizing a rate of $1.40 for painters in its determinations since January 23, 1943.

In view of the fact that the change was made by the department of labor, respondent's claim was a legal and valid one to be settled through the general contractor against the owner (Federal public housing authority of the United States government), for the increase to which the subcontractor would be required to pay by reason of the redetermination of the wage scale.

Appellant general contractors, without knowledge of respondent subcontractor, entered into the agreement, as stated above, with the owner (Federal public housing authority), which amended the general contract and changed the wage scale for the painters employed by subcontractor from $1.25 to $1.40 an hour. By the terms of the change order accepted by appellants, respondent subcontractor's right to make a claim for the increased cost was taken away. Appellants agreed that all claims against the Federal public housing authority incidental to or as a consequence of the change in the wage scale "are satisfied."

By their supplemental agreement with the owner and the acceptance of the terms of the change order, appellants breached the subcontract with respondent and caused him the loss consequent upon the change in the wage scale. The agreement of appellants with the Federal public housing authority that there should be no change in the contract

price incidental to or as a consequence of the change in the wage scale, which agreement was made without knowledge of respondent, was not binding upon respondent. Appellants' waiver of their claims against the housing authority did not relieve appellants from their agreement to afford to respondent the remedies and redress of which appellants could have availed themselves under the general contract.

Appellants' modification of that contract by the supplemental agreement and change order without the knowledge of respondent, could not take away from respondent the right to make a claim against appellant contractors for the increased cost of the work under the subcontract. While appellants barred respondent from making a claim through appellants against the Federal public housing authority for the increased cost, appellants could not deprive respondent of the right to recover against appellant general contractors, who could not waive the right of the subcontractor.

Respondent subcontractor was entitled to payment on his subcontract in accordance with the changed conditions—increased wage scale—to which the general contractor agreed without knowledge of the subcontractor and incorporated same in and made the changed wage scale a part of the specification and general contract. At the same time, appellants agreed to release the owner from any additional costs under the general contract, which waiver was not binding upon the subcontractor, who, under his subcontract with appellants, is entitled to recover against appellants for the increased cost.

The argument of appellants that no loss resulted to respondent from the change order, in view of the fact that respondent could not obtain painters for less than $1.40 an hour, is not tenable. The fact is that respondent could not obtain painters for less than $1.40 an hour because the secretary of labor, prior to the time respondent commenced work under his subcontract, increased the wage scale to $1.40 an hour pursuant to the Federal statute cited above,

which redetermination of the secretary of labor appellants accepted and made a part of the general contract. They are bound thereby.

The judgment is affirmed.

STEINERT, SIMPSON, and MALLERY, JJ., concur.

September 5, 1946. Petition for rehearing denied.

[1]Reported in 170 P. (2d) 326.